3230146, the people of the state of Illinois, Eppley v. Eric M. Maya, Appellant. Mr. Boyd, you may proceed. Thank you, Your Honor, and good afternoon to Your Honors. My name is Andrew Boyd from the State Appellate Defender's Office on behalf of Eric Maya, if it please the Court and Counsel. What this case is about is one of the bedrock, fundamental rights that every criminal defendant in the United States has, and that's the right to a trial before a fair and unbiased jury. And unfortunately, Eric's right to an unbiased jury was violated here in a particularly egregious manner. What happened was, prior to and during his trial for the offenses of first-degree murder, attempted first-degree murder, and unlawful possession of a weapon, Eric was incarcerated at a facility called the Will County Adult Detention Facility, which is essentially the jail. There was a corrections officer whose name was Kevin McGrath. He worked at the jail as a corrections officer, and he worked there while Eric was incarcerated in that facility during the pendency of this case. Mr. McGrath ended up on the jury that convicted Eric of all three of these very serious offenses. Now, during the evidentiary hearing in the Crankville remand in this matter, Mr. McGrath testified that he knew who Eric was. He'd worked on Eric's residential pod several times, and he'd even engaged in brief conversations with Eric during this time period. Under the well-established doctrine of applied bias or presumed bias, Mr. McGrath was biased against Eric as a matter of law, and your honors, that is a structural error that is subject to automatic reversal. Mr. Boyd, if we agree with this argument, then a correctional officer can be on a jury if there was someone that's supervising that detainee, correct? No, no, that's not correct at all. Our argument is fact-specific. It's specific to the facts of this case, and those facts are not just that, and the state makes this argument in their brief. The state argues that, well, what we're trying to do here is to simply argue that, for no other reason than that of Mr. McGrath's job title or his job, he's disqualified from being a juror, and that all corrections officers are therefore disqualified for being jurors, and that's not the argument that I'm making here. I can imagine a situation in which a corrections officer might, for example, work in an administrative capacity and never have any argument with that. Yes, your honor. It's the direct contact. It's the interactions, the admitted conversations, even though brief admitted conversations, direct interactions and conversations that lead us to argue implied bias here, your honor. You're saying then, following up on that, that it's fact-specific to a particular incarceration? Well, it's fact-specific to each and every case, your honor, but here, yes, we're talking... We're looking, yeah, not every case. I mean, you focused on a relationship. Yes, that's absolutely correct. What we're focused on here is the specific relationship that Mr. McGrath had with Eric, and the nature of that relationship was, which was that Mr. McGrath was exercising custodial control over Eric under the auspices of the Will County Sheriff's Department. He was Eric's master, to use a phrase from that well-established case law that I've cited in my brief. Mr. McGrath was Eric's jailer. How in the world can this man be on Eric's jury? This should never, ever have happened. It's just jaw-dropping to me, unfortunately, that Eric's trial attorneys allowed this to happen. So yes, to answer your question, your honor, this is fact-specific to the specific relationship that Mr. McGrath had as a jailer. Somebody... So are you telling me that so the inquiry for bias, prejudice, however you want to call it, inability to be an objective, unbiased juror, that that can never be cured because of the relationship of the juror to the incarceree, which is a structural relationship? I don't see how in the world that could possibly be cured, your honor. To answer your question, in my very humble and personal opinion, it is a direct and resounding no. That cannot be cured. That is an incurable disqualification of Mr. McGrath, and it's a structural error that requires reversal of Eric's case. So it's then supervisory authority over the individual. Not just supervisory. Custodial. Mr. McGrath, by virtue of his position, would have seen Eric locked in a jail cell, in jail clothes. He would have instructed Eric to do certain things, to not do certain things, when he could do certain things, when he could not do certain things, when he could eat, for example, when he could shower. And for all we know, Mr. McGrath may well have placed Eric in handcuffs at some point during the pendency of this trial within that facility. This man should never, ever have been on that jury. If there was ever a case of implied or presumed bias, your honor, this is it. And if this was an implied bias, I cannot imagine for the life of me what a case of implied bias would be. But you're not willing to go to the broader step of any correctional officer who performs custodial duties in an incarceration environment. I'm not asking, if what you're asking is, am I asking this court to draw a bright line rule barring corrections officers from serving on juries? No, the answer is no. So it's got to be specific, and who makes the determination then? Because you're not making an occupational bright line and narrowing it down to being in that occupation, but custodial, okay, as a master in any correctional facility. Because one would argue that prejudice would exist there by the nature of that behavior in a custodial environment. I think that argument would be available. I don't think it would be as strong as it is in this particular case. And again, to underline, I'm not asking this court to rule generally that corrections officers cannot be on and it's not necessary for this court to reach that conclusion in order to give Eric relief. What I am arguing is that it was the specific nature of Mr. McGrath's relationship with Eric, and that was that he encountered him. And he admitted this during his testimony in that Crank Isle hearing. He had encountered Eric on more than one occasion, face-to-face encounters with Eric. He talked to him. He'd seen him. He knew what the charges against Eric were due to his employment as a corrections officer. Mr. Boyd, didn't McGrath indicate that he had access to information with regard to the defendant? I think he said in his testimony, he said, but I wasn't looking for it, but he had access to information about the defendant as part of his duties. To the best of my recollection, Your Honor, that's a correct understanding of the record, yes. So, he had access to the information. He's acknowledged knowing him. He acknowledged knowing about him, correct? Those are all, yes. Yes, Your Honor. Okay, thank you. Sure. So, let me very briefly just outline, and this is all in my brief, and I don't want to be late. So, given that Justice Danforth has presented to you and you say yes, then just because of yes in those areas, he should be disqualified as a juror? Absolutely, Your Honor. I guess I'm struggling to make myself clear here, and I don't understand why that would be. There can't possibly be a more clear example of implied or presumed bias. The man held Eric in custody. He held Eric in custody, and then he sat in judgment of him on a murder case. It is flabbergasting to me that defense counsel, trial counsel, didn't ask the appropriate questions to determine what the nature of Mr. McGrath's relationship to Eric was, and Mr. Leonard even admitted during his testimony in this crankout hearing that had Eric told him of these things, he would have stricken McGrath from the jury. So, Leonard understood that if all these things were true, Mr. McGrath never should have been on that jury. Well, that's Mr. Leonard's responsibility to find these things out. It's not Eric's responsibility to tell Mr. Leonard these things, although he certainly could have, but it's not his responsibility to do that. Mr. Leonard was a professional here. Co-counsel Ms. Leroux was a professional here. They needed to ask these questions. If this court, and I respectfully submit, is considering making some sort of determination that Mr. McGrath was not impliedly biased here, then what this court is going to do with all due respect is to absolutely eviscerate the doctrine of implied bias. If Mr. McGrath was not impliedly biased here, there's no such thing as implied bias. He held Eric in custody. He would have seen him in jail clothes. He would have seen him in handcuffs. He said that he was a night watchman, essentially, on that pod. He would have seen Eric locked behind a jail cell door, sleeping in jail clothes, in a locked jail. And then he walks right across the street and sits in judgment of Eric on the jury. That can't be. That cannot be. There cannot be any more clear example of implied bias. A bench trial with an in-custody defendant usually doesn't require that defendant to be dressed in three clothes. He comes up in his jail uniform, comes up in cuffs, he sits down at the table, and the judge hears the case. What's the difference here? This was a jury trial. This wasn't a bench trial. But the judge is subjected to all those same things that you just talked about. Right? But we presume that a judge, number one, knows the law, and number two, has the utmost respect for the law, and would never exhibit or allow him or herself to be affected by that type of bias when the judge is reaching a decision in a bench trial. We presume those things of the individuals who don the robes in the circuit courts in the state of Illinois. Well, that's a presumption, Mr. Boyd. Now we do have a citizen juror, a citizen person who's called to jury duty. What was the questioning, if any, by the court to deal with these presumptions, to find out if they're actually there in the mind of the prospective juror? Weren't there several kind of out of ordinary inquiries? As to Mr. McGrath, Your Honor? Yes. I'm just asking whether, yes. Well, the thing that got Mr. McGrath called back into chambers was the fact that he had a brother-in-law who was apparently an ASA for the Will County State's Attorney's Office. That was what got him brought back into chambers, and he insisted that he could be fair despite that. Actually, I believe it was his son-in-law, Mr. Boyd. Correct. You're correct, Your Honor. You're correct. There wasn't a lot of examination of the witness who went on to become an alternate juror, correct? Correct. He was alternate number one. The juror became ill during the course of the trial, and he was installed on a jury. Correct, Your Honor. I see that my time is just about to expire. I just want to briefly touch on a couple of things about what I'm arguing are Mr. McGrath's false and incomplete answers during wide deer. He said he didn't know Eric. That's just not true. He knew Eric, and he knew that he knew Eric. I hesitate to accuse somebody of lying, but that's about as close as it gets. He knew darn well that he knew Eric, and he didn't give a full answer when he was asked what he did. He didn't say that he was a corrections officer at the jail. He said, well, I'm a lawyer. For all these reasons, the reasons we've expressed in our brief, the reasons I'm expressing here today, we urge this court to find that Mr. McGrath was impliedly or presumptively biased against Eric, and reverse all three of Eric's convictions, and I thank this court for its time today. Any further questions from the court? No. Okay. You'll have time in reply, Mr. Boyd. Mr. Jenidovic, you may respond. Good afternoon, Your Honors. May it please the court, I'm Gary Jenidovic with the State's Attorney's Public Prosecutor's Office. This case is before the court today following the denial of, following a clinical hearing in which claim of ineffective assistance of counsel based on factual bias was raised and denied. So the trial judge in this case, and I'm going to try to come full circle with all this time committing, but I think if you listen, well at least at this point right now, the claim that was made in the trial court of which the trial judge made rulings has been abandoned. Defendant now doesn't claim actual bias, he's now claiming implied bias. So obviously right now, the issue before the court is one of forfeiture. Well, defendant's structure of his argument is such that he basically claims because implied bias is structural error, therefore we don't have to establish prejudice. Well, what happens with that is that basically helps defendant over the hurdles of establishing not only prejudice in terms of plain error, but also in terms of ineffective assistance of counsel. So actually, this case actually just really hinges on whether or not this court determines whether there was plain error. And that error would be, was Mr. McGrath impliedly biased? So having said that, I think if you assess defense counsel's argument, even though the defendant is arguing, we're not looking for a rule that would ban all correctional officers. I think if you look at his argument and what he says, that's exactly what he's asking for. That's exactly what the end result will be. And that's because he basically points to things like he claims that, or he basically says that Mr. McGrath saw the defendant in jail, knew about his charges from his employment, possibly saw him in handcuffs. Some of the things that were talked about as to what might be, could be, and ought to be, there's nothing in the record to support that. But we do have evidence in the record from what juror McGrath stated and what the trial judge found. And so what I'm going to take and do here is I'm going to basically kind of structure my Supreme Court case, often I believe by Justice Neville, that basically the claim was made that the trial judge, Erd and counsel was ineffective for not striking the juror who was impliedly biased. And there are some, there's some preliminaries here that I think are very important in the assessment of the defendant's argument here, as well as in his brief. Starting with, basically starting with the standard of review, because it's almost, the standard review here is almost like a suppression hearing. Whether the objecting party alleges actual or implied bias, the juror's relationship to the parties is a question of fact to be answered from the evidence. And the trial judge's findings regarding that relationship is not to be reversed unless manifestly erroneous. So the factual findings made by the trial judge, which by the way, defendant does not even address, doesn't even get close to, those things, the assessment of credibility, the assessment of the findings by the trial judge are to be accepted unless manifestly erroneous. From there, the court went around to the second phase, which is they state that, and I'm quoting now, in certain relationships with a party or other participant. Whether the juror's relationship to a party or other trial participant supports a presumption of bias is a question of law that we reviewed de noble. So what this court, the structure of this court's review is, you look at the trial judge's findings, and unless they're manifestly erroneous, they are accepted. You then take those findings, which those findings are going to be based on his assessment of what that relationship was between juror McGrath and the defendant. And then you have to determine whether or not, as a matter of law, the juror was biased. Now, we get to the crux, some of the crux of the matter here, is whether a juror's relationship falls within the scope of these extraordinary circumstances is determined by the degree of closeness of the existing relationship. The court in Bush then goes on to say, and again, I am quoting, we are reluctant to create a bright line category of individuals to which an applied bias will be imputed because a finding of implied bias cannot be rebutted by even the strongest proof of the juror's impartiality. Now, I'm going to stop right there because that one sentence there addresses both Justice Settle's and your honor, your questions and your focusing on bright line rules and about potentially rebutting. If the juror, according to Bush and the case law, if you create a bright line rule, then everybody's excluded. And no matter how impartial they can possibly be, if you basically do that, it's over, plain and simple. So now, continuing on with the quote, the better approach when a defendant raises a colorable claim of juror bias is to investigate the closeness of the relationship to determine whether a prospective juror suffers from an implied bias. The inquiry will often depend on the fatality of the circumstances. I'm going to stop there again. Once again, now in this case, we had the clinical hearing, part of that clinical hearing addressed factual bias, not implied bias, but we still have a lot of discussion about juror McGrath's job, what he does, and the interaction and everything. And I'm going to get to those facts in just a little bit. Now, concluding... Can you distinguish, Mr. Godevich, between implied bias and actual bias? You said that's not being addressed by opposing counsel. Just tell me what the difference is. Actual bias would be factual. In other words, you know, I don't care what you said. I don't care what the evidence is. This defendant shot this girl or did whatever, okay? I want to find him guilty. I don't care what the instructions are. I'm going to find factual bias. Implied is based on something else. Factual bias has to be either expressed or observable behavior. That would be correct. And now, help me out with implicit bias. With the implied bias, well, if I... Can I answer your question with the end of the quote? Because I think this is... Yes, go ahead. Sure, sure. Thank you. The court then says, if additional questioning establishes that an average person in the position of the juror would be prejudiced and feel substantial emotional involvement in the case, then the trial judge should conclude, despite any assurances to the contrary, that the juror suffers from an implied bias. What they're saying is, and what they eventually held in the Bush case, was that the prospective juror was the step grandmother of a particular victim. And what they said is, they said the questioning of juror Proctor in that case did not establish that an average person in juror Proctor's position would be prejudiced and feel substantial emotional involvement in the case. And another example that they gave of implied bias came from the Indra Sagan case that they cite, which basically is, they say, for example, if the corporation is on trial, a clerk of the company, a secretary of the company, an officer or some other employee of the company, that person would have, if you will, be prejudiced and feel a substantial emotional involvement in the case because their employer is on trial. So that is the kind of implied bias that we're looking at. And what is devoid totally from the defendant's argument in his brief, as well as here before the court, is a showing of any kind of evidence of any kind of a feeling of substantial emotional involvement in the case that would raise an implied bias. The entire argument is based simply on the fact that juror McGrath was a correctional officer at the Will County Adult Detention Facility who, from time to time, was in the pod, supervised the pod the defendant was in, okay? And so what we get to now is, we get to the facts of the case. We get to the facts of this so-called connection that's needed, the special circumstance. If you take a look at the defendant's brief, as well as what he argued here, he basically argued McGrath is a correctional officer, he worked the defendant's pod, he knows the defendant because of his employment, and he had conversations with the defendant, okay? All right? That's all that he says. That's all based just on the fact that he's a correctional officer. It doesn't show anything special, any kind of emotional connection. What about his answers to the questions from the judge? The fact that he didn't volunteer, that his interaction with this particular defendant, that he had one? I think what that does, Your Honor, I think that kind of focuses on what the trial judge said in this case. The trial judge basically said- I understand the argument, but isn't it bothersome that he didn't just announce the fact that he knew him in his brief? Well, the thing is, what that gets down to is, is the fact that at the time, okay, just like in a lot of cases, a juror doesn't realize something until afterwards, until it gets into the case. From what the trial judge held in this case, he basically accepted he probably didn't recognize him. McGrath worked 11 to 7 shifts. The guy's- yes, he's in a cell, okay? Yes, the guy is asleep. There's not much interaction going on. He didn't work the pod all the time. He worked the pod occasionally. Please go back to the original hearing, which was in September of 2014. Justice Heddle's question to you about his answers. The fourth person, he's the fourth person asked by the court if he knows the defendant. Another individual right before him answers, potentially, I do. Potentially. Then is examined by the court as to what do you mean by potentially? She says, I serve on a board with him. That was the end of it. That was the end of the questioning. At that point, when you know that you are a corrections officer and the witness and the potential juror right before you says, potentially, I know this person, wouldn't you think then when you are working in the pod that your answer might also be, potentially, I know him because I am in charge of him? Yes, I would say that. At the same time, if you happen to not absolutely actually recognize him, would you say, potentially, because the fact he is in jail and I work pods in jail, I could potentially have run into him? Possibly? Go ahead. So the thing is, in this case, potentially. In this case, he worked the third shift, like I said. He knew the defendant because of his appointment. He basically had minimal contacts with defendant and had no conflicts, no interactions other than to say hello or good evening. And from all of this, the trial judge determined that he did not intentionally answer untruthfully. He says in observing the witness's demeanor, he basically said he found that he would not have said what the defendant claimed. And he basically found that defendant's testimony about everything that was said was incredulous. And the trial judge further went on to take and find that he believed that because of the hour he worked, he kind of put all the facts together about when he worked and what he did. And the little contact that he had, that he may not have recognized him. Irrespective of the potentiality of Mr. McGrath saying, well, it's a possibility, I mean, he's in jail and I do work the pods, okay. But when he was asked if he actually knew him, he said no. He answered directly. He took the question specifically, directly as asked, and he answered it as asked. But then the trial judge goes on. And what he said, he says McGrath was truthful. He worked multiple pods, rotating schedule, not in the same pod all the time, worked midnights, people asleep, not a lot of interaction with defendant, can't place the basis in so many different pods. This is what the trial judge found. And I think these factual findings are not manifestly erroneous. And so when this court makes this assessment, it has to take and accept the trial judge's findings of fact. Okay. And then the other thing, of course, this all came in primarily because the crank behind is ineffective assistance. Basically, the trial just says that basically the defendant didn't tell his attorney what's going on, didn't tell his attorney. He says basically, if all of this stuff happened of what defendant claimed happened, he would most certainly have screened to take and get this guy up. So I see my time is up. I will therefore just simply ask this court to basically find that Jerry McGrath was not impliedly biased and that this court should affirm. Thank you. Any questions from the bench? Thank you, counsel. Mr. Boyd. Yes, your honors. What I'd like to do, and I understand my time is somewhat limited here on rebuttal, so I'll try to be brief, but Justice Holdridge, I'd like to answer your question in as much detail as I can quickly here about the difference between actual bias and implied bias, because it's crucial in this case. Actual bias is bias in fact, and that means what it means. It means that a juror is actually biased when he or she has a state of mind such that they are actually unable to be impartial in the case. The problem with actual bias is it's very difficult to prove. Unless you have a flat-out admission by a potential juror that he or she's actually biased, you're not going to figure that out. And so the case law, and this is well-established case law, has established the doctrine of implied bias. And it takes us all the way back to the city of Naperville would be Whirley Illinois Supreme Court case 1930. And it's amazing to me that this concept was recognized by these folks back in 1930. I just sort of, as an aside, think that's really cool and interesting and neat that these folks back in 1930 were able to pick up on this. And I'm just going to paraphrase here what the Whirley court wrote about implied bias. One is not a competent juror in a case if he or she is a master. That's the first one. Master. Servant, counselor, or attorney of either party. Bias or prejudice is such an elusive condition of the mind that it's impossible to always recognize its existence. And it might exist in the mind of somebody on account of his relationship with one of the parties who was quite positive he had no bias. So with regard to some of the relationships might exist between a juror and one of the parties, bias is implied. That's the difference, your honor. And that's McGrath. That's what he was. He was Eric's master. It's the first one on the list. He's Eric's master. It's plain black letter law like they might even say in some of these TV shows. He was Eric's master. Of course he was impliedly biased. The Whirley court back in 1930 would have figured this out. This is just blindingly obvious and I mean no disrespect to the circuit court. I mean no disrespect to Mr. Maia's trial attorneys or anybody else in this manner. But this is just blindingly obvious. He was Eric's jailer. He kept Eric in jail and then he walked across the street, sat on a jury, and found Eric guilty of murder. An attempted murder to which Eric has been sentenced to spend the rest of his life in prison. This can't be. This cannot happen in the state of Illinois. It just can't. This is an automatically reversible structural error. There darn well ought to be a new trial in this case because what happened here was flat out wrong. Mr. McGrath never should have been on that jury ever. And whether this court wants to go the route of ineffective assistance of counsel or whether this court wants to go the straight route of structural error, I've given the court both of those options. This court can pick whichever one it likes. But Eric's convictions cannot stand. They cannot. Because Eric stood trial before a in the state of Illinois. And with all due respect, the folks that stopped that from happening in the state of Illinois in this case, that's your honors. I respectfully ask that this court reverse Eric's convictions and remand the case for further proceedings. If there's any other questions, I'm happy to answer them. And I thank this court again for its time and its consideration. Questions from the court? Questions. Thank you. I have one for you, Mr. Boyd. The way, you know, actual versus implied bias. If you are in a situation where those external factors are used as a justification for finding implied bias, can you ever get out of that? Can you ever get out of that? I think the answer is that the test here, from my reading of the case law, is that it's a totality of the circumstances test. And every case would be taken on its own merits. Every relation that a potential juror would have with one of the litigants would have to be examined. And we would have to make a determine on a case by case basis as to whether or not somebody would have that sort of relationship that would cause them to be biased as a matter of law, regardless of whether or not they were actually biased. And again, there are some categories, like you said, the very first one, yes. And if you're in that category relationship, you can never leave it. Well, that's a fair question, Your Honor. And I think the answer is still that we take these things on a case by case basis. And I see that I'm out of time, but I'm going to answer your question because it's a fair question and it's a good question. And I think the example that I officer of that jail and who worked, say, in an administrative capability, would on a technical level be Eric's master or a corrections officer who legitimately never encountered Eric. He always worked different pods. He always worked different pods. He never heard of Eric. He didn't know who the heck Eric was. He didn't know what the charges were. He'd never seen the guy. He'd never talked to the guy. He was always in a different pod. He was an active CO, but under the facts of that particular situation, he never ran into Eric, ever. I would say probably in that situation, there's probably not any implied bias or the implied bias argument is harder to make, but that's not what happened here. That's not what happened here. Mr. McGrath was Eric's active master. He was right there in that pod. He was right there in that pod, keeping Eric under control. Day after day after day, that was his job to keep Eric under control. And then he walked across the street and found him guilty of murder, and Eric got sentenced to prison for the rest of his life. Well, you understand the basis of my question is because you started off, and I think it's been discussed here, about bright line rules. Bright lines. And the Supreme Court says, oh no, there's no bright lines. But have they ever answered how it isn't a bright line? All I can say is that the case law says what it says. I don't see any bright lines. I don't see any necessity for bright lines. What I see in the case law is a case-by-case, totality of the circumstances test. And on that test, Mr. McGrath was impliedly biased. Okay. Are there any questions further from the bench? Okay. Good. We're very good. Thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue.